IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TIMOTHY H. RAINS,
      Plaintiff,

vs.                                   Case No. 3:05cv144/RV/EMT

JO  ANNE  B.  BARNHART,
Commissioner of the
Social Security Administration,
      Defendant.

_____/

## REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.     PROCEDURAL HISTORY

      Plaintiff filed an application for DIB under Title II of the Act (Tr. 50-52).[1]  The claim was denied initially (Tr. 26-27, 30-32) and on reconsideration (Tr. 28-29).  On May 28, 2004, following

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on June 8, 2005 (Doc. 4).

a hearing, an administrative law judge (ALJ) found that Plaintiff was not under a "disability" as defined in the Act at any time during the period at issue (Tr. 16-23).   On February 18, 2005, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 4-6).   The Appeals Council's action made the ALJ's decision the final decision of the Commissioner and, therefore, subject to review in this court.   <u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998). Plaintiff's appeal from the final decision of the Commissioner is now before this court.

II.      FINDINGS OF THE ALJ

On May 28, 2004, the ALJ made several findings relative to the issues raised in this appeal (Tr. 16-23).   The ALJ found that:  1) Plaintiff meets the nondisability requirements for a period of disability and DIB set forth in Section 216(i) of the Act and is insured for benefits through the date of his decision;[2]  2) Plaintiff has not engaged in substantial gainful activity since May 8, 2003;  3) Plaintiff's lower back pain and disk disease are severe, but do not meet or equal the requirements of a Listing;  4) Plaintiff is unable to perform any of his past relevant work (20 C.F.R. § 404.1565); 5) Plaintiff is a "younger individual between the ages of 45 and 49" (20 C.F.R.§ 404.1563) and has a "high school education" (20 C.F.R. § 404.1564);  6) Plaintiff has no transferable skills from any past relevant work (20 C.F.R. § 404.1568);  7) Plaintiff has the residual functional capacity (RFC) to perform a wide range of light work (20 C.F.R. § 404.1567);[3] 8) based on an exertional capacity for light work, and Plaintiff's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.21;  9) Plaintiff was not under a "disability," as defined in the Act, at any time through May 28, 2004 (20 C.F.R.§ 404.1520(g)).

III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.   <u>Carnes v. Sullivan</u>, 936 F.2d 1215, 1218 (11th Cir. 1991) (stating "[t]his Court may

---

[2]Plaintiff's alleged onset date was August 26, 2002 (Doc. 7 at 2).  However, the ALJ found that Plaintiff had engaged in substantial gainful activity until May 8, 2003 (Tr. 17-18).  Thus, the time frame relevant to this appeal is May 9, 2003 to May 28, 2004 (date last insured).

[3]Examples of such jobs are: cashier (numbering 838,000 nationally), shipping & receiving clerk (numbering 77,600 nationally), and security guard (numbering 1,000,000 nationally) (Tr. 23).

reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied"); *see also* Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance, i.e., "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps.  The steps are:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe

before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

A.      Personal History

Plaintiff testified at a hearing on January 21, 2004 before the ALJ as follows (Tr. 206-27). He is single and lives alone (Tr. 220-21).  He last worked as an electrician's helper, installing light fixtures and receptacles (Tr. 209).  Prior to working as an electrician's helper, he worked for Lawn Master, fertilizing lawns, for approximately eighteen years (Tr. 210).  His work required lifting fifty to sixty pounds, dragging hoses, and pushing spreaders (*id.*).  He stopped working for Lawn Master due his pain, which was progressively worsening (*id.*).  He filed for unemployment after he left Lawn Master and received benefits from May 2003 through January 2004 (Tr. 222).  In order to receive benefits, Plaintiff was required to search for a job and certify that he was able to work (Tr. 222-23).

The primary problems that caused Plaintiff to quit his jobs were lower back pain, bursitis in

his elbows and shoulders, numbness in his feet and left hand, and aching in his legs (Tr. 211). Plaintiff testified that he "can't walk right" and must sit down after being on his feet twenty to thirty minutes (Tr. 212).  He cannot carry more than ten pounds and has trouble using his arms overhead for an extended period of time (Tr. 215-17).  Plaintiff also has difficulty bending and squatting (Tr. 216).  He was taking no prescribed medications at the time of his hearing, but was taking BC Powders, which temporarily relieved his pain (Tr. 207-08).  Plaintiff testified that Dr. Schmitz recommended fusion surgery, and Plaintiff was considering the surgery, hoping that he could again work outside instead of having to retrain for inside work  (Tr. 213).

On a typical day, Plaintiff gets up at 7:00 a.m., takes care of personal hygiene, and occasionally washes a few dishes (Tr. 218). He then watches television or reads, and he tries to walk around the block (Tr. 219).  He rests in a recliner with vibrating heating pads for a half an hour, three or four times a day (Tr. 219-20).  He occasionally goes to the beach to get out of the house (Tr. 219).  He does not swim, but floats in the water, which is good for his back (*id.*).  He can cook simple meals and do light housework, and his mother helps him with other cooking and cleaning (Tr. 218).  He has a driver's license and is able to drive (Tr. 224).  He does very limited yard work (Tr. 224).

B.      Relevant Medical History

Plaintiff initially presented to David Fairleigh, M.D., on August 7, 1998 with complaints of a twenty-year history of lower back pain, with a recent exacerbation (Tr. 142). Plaintiff denied other associated symptoms (*id.*).  On physical examination, Plaintiff's back range of motion was nearly full, motor strength was normal, and he had "no true radicular pain" to straight leg raising (SLR) (Tr. 143).  Dr. Fairleigh's treatment plan included physical therapy and a Medrol Dosepak (Tr. 144). When Plaintiff returned on September 11, 1998, his pain had improved (Tr. 141).

Plaintiff returned to Dr. Fairleigh on November 13, 1998, March 1, 1999, June 7, 1999, June 21, 1999, October 11, 1999, February 4, 2000, and March 9, 2001 with exacerbation of lower back pain (Tr. 135-40).  Plaintiff was treated for pain and improved with medications (*id.*).

An MRI taken on June 19, 2002 revealed a "focal disk herniation at the L5-S1 level to the left of midline, which [was] seen to impinge upon the left half of the thecal space and upon the exiting left root" (Tr. 117).  The MRI also revealed a small central to left paracentral disk protrusion

at L4-L5 (*id.*).

Plaintiff returned to Dr. Fairleigh on June 28, 2002 with complaints of lower back and lower extremity pain, with numbness and tingling in the lower extremities (Tr. 132).  His medications included Skelaxin, Ultram, and Naprosyn, and he was tolerating them without "significant adversity or GI or CNS side effects" (*id.*).  Plaintiff arose from sitting with difficulty and had a slightly antalgic gait (*id.*).  His back range of motion was "somewhat limited" (*id.*).  Dr. Fairleigh discussed treatment options with Plaintiff, and he decided to proceed with epidural steroid injections (*id.*).

On December 9, 2002, Plaintiff returned to Dr. Fairleigh (Tr. 131).  Dr. Fairleigh noted that Plaintiff underwent injection therapy twice without dramatic improvement (*id.*).  On physical examination, Plaintiff arose from sitting with difficulty and had difficulty heel and toe walking (*id.*).  His motor examination and reflexes were normal and sensation was intact, but it was "subjectively diminished in both feet to light touch" (*id.*).  Plaintiff had "[n]o true radicular pain to straight leg raise" (*id.*).  After discussing treatment options, Plaintiff declined surgery and advised that he wished to continue conservative care, including home exercise and medication (*id.*).

Plaintiff was seen by Ruben B. Timmons, M.D., on March 24, 2003 for lower back pain (Tr. 130).  His range of motion was decreased by twenty-five percent, but his lower extremity strength was normal, he was able to heel and toe walk without difficulty, his gait was non-antalgic, and his reflexes were normal (*id.*).  Dr. Timmons opined that conservative management was indicated (*id.*).  He noted that Plaintiff took "very little as far as medications, [but has] some Naproxen that he takes on occasion" (*id.*).  Dr. Timmons felt that continued management of Plaintiff's symptoms could "be easily managed by his primary care physician" (*id.*).

Bruce Raymon, M.D., saw Plaintiff on November 17, 2003 at the request of Vocational Rehabilitation (Tr. 181-82).  Plaintiff complained of a longstanding history of back pain, which had progressively worsened (Tr. 181).  Plaintiff did not describe any radicular leg pain and did not mention any other neurological symptomology (*id.*).  Dr. Raymon noted "somewhat of a stiffened antalgic gait" (*id.*).  Plaintiff's reflexes were normal, motor strength was normal, and Plaintiff had no consistent dermatomal loss of sensation (*id.*).  Straight leg raise testing and Lasegue's were normal (*id.*).  Dr. Raymon's impression was "chronic back and now right buttock pain not responding to conservative modalities," and he recommended an updated MRI (Tr. 181-82).

Plaintiff was seen in follow up by Dr. Fairleigh on December 19, 2003 (Tr. 188).  Plaintiff related that he was doing better and rated his average pain as a three out of ten (*id.*).  Plaintiff reported that his pain was in his lower back and legs, right side greater than left, with associated symptoms of numbness and tingling, most noticeable in his feet (*id.*).  Dr. Fairleigh noted that Plaintiff's activities of daily living were "at times limited," but that he did enjoy a reasonable quality of life, including fishing and frequent trips to the beach (*id.*).

On physical examination, Plaintiff arose from a sitting position without difficulty, but his gait was antalgic and he had difficulty heel and toe walking (*id.*).  Plaintiff was non-tender to palpation over the lumbar paraspinous muscles and facets, and non-tender with external and internal rotation of the hip (*id.*).  Motor strength was "4/5" to knee flexion and extension, and to dorsiflexion and plantar flexion of the foot (*id.*).  Sensation was diminished to pinprick in the back of the lower extremities, but Plaintiff's knee and ankle reflexes were normal (*id.*).  Plaintiff had "no true radicular pain" to straight leg raise (*id.*).  Dr. Fairleigh's assessment was lumbar disk disease, and he encouraged Plaintiff to continue with conservative care if he was not a surgical candidate (*id.*).

On December 19, 2003, Dr. Fairleigh completed a form stating that Plaintiff's condition met Listing 1.04(A) because he had "objective evidence (MRI) of lumbar HNP [herniated nucleus pulposis] with nerve root impingement giving rise to left lower extremity weakness and decreased sensation" (Tr. 189).  In addition, Dr. Fairleigh completed a physical capacities evaluation (PCE) (Tr. 190-92).  Dr. Fairleigh opined that in an eight-hour workday Plaintiff could sit a total of six hours, in one to two-hour increments, and stand/walk for a total of three to four hours, in one-hour increments (Tr. 190).  He noted that Plaintiff would need to rest, recline, or lie down two or three times a day for thirty minutes (Tr. 191, 195).  Plaintiff could lift twenty pounds occasionally and ten pounds frequently, and he was able to use his hands for repetitive action, but not his feet (Tr. 191).  Plaintiff was able to occasionally bend, squat, and climb; never crawl; and frequently reach (*id.*).  He was moderately restricted from being around moving machinery and unprotected heights and mildly restricted from driving automotive equipment (Tr. 192).  He was not taking any medications that would interfere with his ability to work (*id.*).  Dr. Fairleigh opined that Plaintiff's limitations had lasted, or would be expected to last, for twelve months and that Plaintiff's allegations of pain were consistent with his clinical findings (*id.*).  Finally, Dr. Fairleigh completed a Clinical

Assessment of Pain in which he stated that Plaintiff's pain was present, but did not prevent functioning in everyday activities or working with limitations (Tr. 193).  Dr. Fairleigh further stated that physical activity would greatly increase Plaintiff's pain to such a degree as to cause distraction from tasks or total abandonment of tasks (*id.*).

An MRI was performed on December 23, 2003, which revealed grade I spondylolisthesis of L5 and S1 with an associated spondylolysis, no significant spinal canal stenosis, and a probable small central annular tear with a superimposed central disk protrusion at L4-5 (Tr. 184).

Finally, Plaintiff was seen by Dr. Schmitz for Dr. Raymon on January 13, 2004 (Tr. 196). Dr. Schmitz noted Plaintiff's complaints of back pain and aching legs and that Plaintiff's MRI showed L4-5 and L5-S1 disk disease (*id.*).  He further noted that Plaintiff had appealed twice to Social Security and was under Vocational Rehabilitation, but did not want to be retrained for an "inside type" job (*id.*).  Plaintiff repeatedly stated to Dr. Schmitz that he wanted to recover "all his money" (*id.*).  Dr. Schmitz opined that Plaintiff was a candidate for surgical fusion, but Plaintiff had to decide whether to undergo surgery (*id.*).  Dr. Schmitz stated, "if [surgery] doesn't fit his desire to be on disability and to not pursue work, then I would have concerns" (*id.*).

C.      Other Information Within Plaintiff's Claim File

Robert L. Steele, M.D., completed a physical RFC Assessment on November 12, 2002 (Tr. 145-52).  According to Dr. Steele, Plaintiff was able to lift and/or carry twenty pounds occasionally and ten pounds frequently (Tr. 146).  He could stand and/or walk four hours in an eight-hour workday and sit approximately six hours (*id.*).  His ability to push/pull was unlimited, other than by his ability to lift and/or carry (*id.*).  Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds (Tr. 147).  No manipulative, visual, or communicative limitations were established (Tr. 148-49).  Plaintiff was to avoid concentrated exposure to hazards, such as machinery and heights (Tr. 149).  Dr. Steele noted the MRI showing a herniated disk with nerve impingement and Plaintiff's twenty-year history of lower back pain, antalgic gait, diminished weight bearing on his left leg, and decreased range of motion (Tr. 146).

David Guttman, M.D., completed a physical RFC Assessment on March 19, 2003, and found the same restrictions as Dr. Steele (Tr. 153-60).  Dr. Guttman noted Plaintiff's MRI showing a

herniated disk with nerve impingement and that Plaintiff had an antalgic gait in December 2002, his motor strength was "5/5," his SLR test was negative, and he was neurologically intact except for subjective complaints of diminished sensation in both feet (Tr. 154-55, 158).

C.W. Koulisis, M.D., performed a consultative examination (CE) on November 26, 2003 (Tr. 164-72). Dr. Koulisis reviewed Dr. Fairleigh's records and the June 19, 2002 MRI report (Tr. 164). Dr. Koulisis noted that Plaintiff's chief complaint was back and right leg pain, "which was not dermatomal in its distribution (contralateral to the MRI)" and occasional left foot pain (*id.*). On physical examination, Plaintiff arose without difficulty, had a normal gait, and was able to heel, toe, and tandem walk without difficulty (Tr. 165). Plaintiff's thoracolumbar spine had no palpable spasm, his motor strength was "5/5," and his reflexes were 2+ and equal (*id.*). Plaintiff's sensation was intact to light touch, he had negative tension signs bilaterally, and full range of motion of his lumbar spine (Tr. 165-66). Dr. Koulisis' impression was "low back pain [with] L5-S1 disk disruption without significant ipsilateral leg pain (neurologically intact)" (Tr. 166). Dr. Koulisis opined that no further diagnostic or treatment modalities were indicated other than a self-directed exercise program (*id.*).

Dr. Koulisis also completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" (Tr. 169-72). He opined that Plaintiff could lift/carry twenty to fifty pounds occasionally and that Plaintiff's sitting, standing, and walking abilities were not affected by any impairment (Tr. 169-70). He further opined that Plaintiff could frequently climb, stoop, crouch, kneel and crawl, and continuously reach, handle, feel, push/pull, hear, and speak (Tr. 171). According to Dr. Koulisis, Plaintiff was restricted from vibration, but had no other environmental restrictions (Tr. 172).

V.   DISCUSSION

Plaintiff raises three issues on appeal. He contends the ALJ erred: 1) in failing to assign great weight to the opinion of Plaintiff's treating physician (Doc. 7 at 10); 2) in discrediting Plaintiff's subjective symptoms without applying the proper standard (*id.* at 13); and 3) in relying on a response from the vocational expert to a hypothetical question that failed to comprehensively describe Plaintiff's conditions (*id.* at 16). Defendant maintains that the decision of the Commissioner is supported by substantial evidence and should be affirmed (Doc. 8).

A.       Treating Physician's Opinions and Listing 1.04(A)

Plaintiff contends the ALJ erred in failing to assign controlling weight to treating physician Dr. Fairleigh's opinion that Plaintiff's lower back condition met, or equaled in severity, the requirements of Social Security Listing 1.04(A) and his opinion regarding Plaintiff's work-related physical capacities, as contained on the December 2003 PCE (Doc. 7 at 10-12).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See* Lewis v. Callahan, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997);  Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991);   Sabo v. Commissioner of Social Security,   955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See* Edwards, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See* Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also* Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).  Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion.  *See* Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  Moreover, the opinion by a treating

physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims.  The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner.  For instance, 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion.  Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").  Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record.  SSR 96-5p.  In <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1441 (11th Cir. 1997), the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do any work, and the physician subsequently wrote a letter saying the claimant was completely disabled.  To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters.  Additionally, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters.  These things are not properly considered by the Commissioner in determining disability.  20 C.F.R. § 404.1566.  For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

In the instant case, the ALJ noted Dr. Fairleigh's opinion that Plaintiff's back impairment met the requirements of Listing 1.04(A)[4] (Tr. 19).[5]  However, in discounting this opinion, the ALJ also noted that on December 19, 2003, Dr. Fairleigh documented that Plaintiff arose from a sitting position without difficulty and was non-tender to palpation over the lumbar paraspinous muscles and facets, and was also non-tender with internal and external rotation of the hip (*id.*).  The ALJ further noted that Plaintiff's SLR testing was <u>negative</u> and his reflexes were 2+, and that other than Plaintiff's self-report of decreased pinprick sensation in the back of his legs, Plaintiff's neurological examination was normal according to Dr. Fairleigh (*id.*).  Moreover, the ALJ noted that Dr. Fairleigh encouraged conservative care and follow up if Plaintiff was not a surgical candidate; he also noted Plaintiff's report that he enjoys fishing and going to the beach "frequently" (*id.*).  Thus, the ALJ concluded that Plaintiff's impairment did not satisfy the requirements of Listing 1.04.  The ALJ did not err in rejecting the contrary opinion of Dr. Fairleigh.  First, the ALJ provided specific reasons, supported by the record, for finding that Plaintiff did not meet the Listing.  Second, as explained above, the determination of whether Plaintiff meets any listing and is therefore disabled is reserved to the Commissioner.

To the extent Plaintiff argues that the ALJ erred in determining that he did not meet Listing 1.04(A), Plaintiff's argument must fail.  Initially, Plaintiff contends that the ALJ erred in concluding that Listing 1.04(A) requires a finding that Plaintiff is unable to ambulate effectively (*see* Doc. 7 at 11-12, Tr. 19).  In so concluding, the ALJ cited to 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 Listing 1.00(B)(2)(b), which defines an "inability to ambulate effectively" and is included in the introductory section of the listings for <u>all</u> impairments involving the musculoskeletal system, including Listing 1.04.  Listing 1.00(B)(2)(a) specifically provides that "<u>regardless of the cause(s)</u>

---

[4]Listing 1.04(A) states as follows: <u>Disorders of the spine</u> (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, [with] [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

[5]As noted above, Dr. Fairleigh found that Plaintiff met the Listing because "[Plaintiff] has objective (MRI) evidence of lumbar HNP [herniated nucleus pulposis] with nerve root impingement giving rise to left lower extremity weakness and decreased sensation" (Tr. 189).

of a musculoskeletal impairment, functional loss for purposes of these listings is defined as an inability to ambulate effectively on a sustained basis . . . [which] must have lasted, or be expected to last, for at least twelve months (emphasis added)."   Therefore, it is reasonable to conclude, that in order to meet any listing under the musculoskeletal system listings, functional loss as defined by the general language of Listing 1.00 must be present.  *See, e.g.,* Meredith v. Barnhart, 2004 WL 2367816 at *2 (E.D. Pa. Oct. 19, 2004) (so finding).   However, despite this apparent requirement, many of the individual musculoskeletal system listings specifically include a requirement that the impairment result in "an inability to ambulate effectively, as defined in 1.00(B)(2)(b)" (*see, e.g.*, Listings 1.02(A), 1.03, 1.04(C), 1.05(C), 1.06(B)), while others specifically exclude the same requirement (*see, e.g.*, Listings 1.02(B), 1.04(A) and (B), 1.07, 1.08).   A general principle of statutory construction provides that when Congress has included particular language in one section of a statute, but omits such language in another section of the same statute, it is generally presumed that "Congress acts intentionally and purposefully in the disparate inclusion or exclusion."  Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (internal quotations omitted).   Another general principle provides that a more specific statute covering a particular subject controls over a statutory provision covering the same subject in more general terms.  Balfour Beatty Bahamas, Ltd. v. Bush, 170 F.3d 1048, 1050 (11th Cir. 1999).  In this situation, the individual listings are more specific than the general language of the introductory paragraphs.  Hence, it must be concluded that those listings which do not specifically require a "resulting inability to ambulate," including Listing 1.04(A), operate as an exception to, or a qualification of, the more general terms of the introductory paragraphs.  *Id.*  Accordingly, this court concludes that Listing 1.04(A) does <u>not</u> require a finding that a spine disorder result in an inability to ambulate effectively in order for a claimant to meet the listing.

However, this court's conclusion does not affect the ALJ's ultimate determination because, in addition to correctly noting that Plaintiff did not have an inability to ambulate effectively, the ALJ also found that Plaintiff did not meet other requirements of Listing 1.04(A).  To meet Listing 1.04(A), Plaintiff must have a disorder of the spine resulting in compromise of a nerve root or the spinal cord with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or

muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

The ALJ found that Plaintiff had the necessary spine disorder (i.e., a herniated disk); however, Plaintiff did not have the necessary resulting nerve root compression <u>as defined by the listing</u>. Although Dr. Fairleigh opined that Plaintiff met the listing, the ALJ properly discounted this opinion, as discussed above. Moreover, Dr. Fairleigh's opinion merely noted that Plaintiff's "nerve root impingement" resulted in "left lower extremity weakness and decreased sensation." However, Listing 1.04(A) requires more, including a <u>positive</u> SLR test if there is involvement of the lower back. As noted by the ALJ, even Dr. Fairleigh found that Plaintiff's SLR testing was negative (Tr. 19, 131, 143, 188). Additionally, Dr. Raymon's testing revealed negative SLR tests, and Dr. Guttman noted Plaintiff's negative SLR testing (Tr. 155).

The ALJ also noted Dr. Timmons' documentation of Plaintiff's "5/5" motor strength and Dr. Fairleigh's notation that Plaintiff's neurological examination was negative (Tr. 18-19). Further, the ALJ noted Dr. Koulisis' opinion that Plaintiff's allegations of back and leg pain were "contralateral to his disc herniation," and on examination, Dr. Koulisis found that Plaintiff had full range of motion of the lumbar spine, was neurologically intact with negative tension signs, had intact sensation, and had no limitations in his abilities to sit, stand, or walk (Tr. 20). Plaintiff takes issue with the ALJ's failure to mention the opinion of Dr. Schmitz concerning Plaintiff's disk herniation and candidacy for fusion surgery, as those opinions were consistent with Dr. Fairleigh's (Doc. 7 at 12). However, the ALJ never questioned the existence of Plaintiff's disk herniation. In fact, he found it to be a severe impairment. The ALJ was also aware that the possibility of surgery had been discussed with Plaintiff, as he twice mentioned Plaintiff's decision to forgo surgery (Tr. 19). Moreover, Dr. Schmitz's notes suggest to this court that Plaintiff refused surgery because he wanted disability benefits, and did not want to pursue work or retrain for an "inside type" job (*see* Tr. 196). Social Security disability benefits may not be awarded to individuals who are unemployed because they "do not wish to do a particular kind of work." 20 C.F.R. § 404.1566(c)(8). "The job need only exist; it need not be a job that the applicant would find attractive." <u>Schmidt v. Sullivan</u>, 914 F.2d 117, 119 (7th Cir. 1990). Thus, this court sees no harm to Plaintiff in the ALJ's failure to mention the report of Dr. Schmitz. If anything, the report calls into question Plaintiff's motivations and

arguably weakens his position.

In sum, the ALJ's conclusion that Plaintiff's impairments did not meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 is supported by substantial evidence in the record.  Specifically, his determination that Plaintiff did not meet Listing 1.04(A) is well-supported, as Plaintiff had no neuro-anatomic distribution of pain or positive SLR testing.

Regarding Plaintiff's physical capacities, the ALJ noted that Dr. Fairleigh limited Plaintiff to sedentary work and Dr. Koulisis limited Plaintiff to medium work (Tr. 20).  However, after considering the record as a whole, the ALJ concluded that the "mid-point of these findings is appropriate" (*id.*).  The ALJ noted that Plaintiff is prescribed no pain medications; that he selected a very conservative approach to his medical treatment; that he reported enjoying hobbies such as fishing, yard work, and going to the beach; and that the record contained no support for Plaintiff's allegation that he needed to recline or lie down during the day (Tr. 20-21).  Accordingly, the ALJ found that Plaintiff can perform light work activity, consistent with the opinions of two state agency medical consultants (Tr. 21).[6]  Specifically, the ALJ found that Plaintiff:

> can lift and carry up to 20 pounds occasionally and can sit, stand and/or walk at least six hours in an eight hour workday.  [Plaintiff] should never climb ropes, ladders, and scaffolds but can perform other postural activities such as balancing, stooping, kneeling, crouching and crawling.  He should avoid hazardous machinery, unprotected heights, and vibrations but has no other environmental restrictions."

(Tr. 21).

It should be noted that in some respects, the ALJ's findings were <u>more</u> restrictive than those of Dr. Fairleigh (i.e., Dr. Fairleigh found that Plaintiff could lift or carry twenty pounds frequently, while the ALJ found that Plaintiff could do so only occasionally; Dr. Fairleigh found that Plaintiff could climb occasionally, while the ALJ found that Plaintiff should never climb ropes, ladders, and scaffolds; and Dr. Fairleigh found that Plaintiff was moderately limited in being around moving machinery and unprotected heights, while the ALJ found that Plaintiff should avoid such things

---

[6]It was not improper for the ALJ to rely on the opinions of the medical consultants.  *See* 20 C.F.R. § 404.1527(d) (discussing weight given to medical opinions when controlling weight is not given to a treating source's opinion); <u>Richardson v. Perales</u>, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (report of consultative examiner may constitute substantial evidence supportive of a finding adverse to a claimant).

altogether).  In other respects, the findings were similar (e.g., each found that Plaintiff could sit up to six hours in an eight-hour workday, although Dr. Fairleigh found that the sitting must occur in one to two-hour increments).  Additionally, Dr. Fairleigh found that Plaintiff's pain did not prevent working with limitations (Tr. 193).  The only meaningful differences between the two opinions appear to be the opinion of Dr. Fairleigh that Plaintiff would need to rest, recline, or lie down several times a day and that Plaintiff could stand or walk up to four hours per day, instead of six as found by the ALJ; however, the ALJ noted that there was "little clinical evidence" to support those opinions of Dr. Fairleigh, and that Plaintiff's need to lie down had no support in the record and was contradicted by Plaintiff's physical examinations and daily activities (Tr. 19).  Thus, the ALJ properly rejected those portions of Dr. Fairleigh's opinion.

      B.     Eleventh Circuit Pain Standard

Plaintiff contends the ALJ erred in failing to apply the Eleventh Circuit's pain standard and discounting Plaintiff's subjective symptoms (Doc. 7 at 13-16).

Pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.  In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test.  Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991); Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the

subjective pain testimony that this court interpreted when initially establishing its three-part standard." Wilson, *supra*, 284 F.3d at 1226.  Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself."  Elam, 921 F.2d at 1216.  The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987)).  However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered.  *Id.*; Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the Plaintiff concerning pain] he must do so explicitly and give reasons for that decision . . . .  Where he fails to do so we hold as a matter of law that he has accepted that testimony as true."  MacGregor v. Bowen, 786 F.2d at 1054; Holt v. Sullivan, 921 F.2d at 1223.  "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole."  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted).  The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."  Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[7]  People with objectively identical conditions can experience

---

[7] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  Hand, *supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence."  Arnold v. Heckler, 732 F.2d 881, 884  (11ᵗʰ Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

In the instant case, the ALJ's decision did not specifically cite the Eleventh Circuit pain standard, but the ALJ referred to and applied 20 C.F.R. § 404.1529 in addressing Plaintiff's subjective complaints (Tr. 19); thus, the ALJ did not err.  *See* Wilson, 284 F.3d at 1226.  Moreover, if the ALJ's findings of fact "leave no doubt as to the appropriate result" under the standard, the fact that the ALJ does not explicitly refer to the standard is of no consequence.  *See* Landry v. Heckler, 782 F.2d 1551, 1553-54 (11ᵗʰ Cir. 1986).  Here, as in Landry, the ALJ's findings of fact leave no doubt as to the appropriate result under the Eleventh Circuit standard.  First, the ALJ found evidence of an underlying medical condition, specifically, disk disease and back pain; he also found that those impairments were "severe" within the meaning of the Act (Tr. 18).  Second, the ALJ made findings indicating that there was neither objective medical evidence confirming the severity of Plaintiff's alleged pain, nor an objectively determined medical condition of such severity that could reasonably be expected to give rise to the alleged pain.  Specifically, the ALJ noted that Plaintiff was found to have a focal disk herniation at L5-S1 to the left of midline and a paracentral disk protrusion at L4-5 (Tr. 18); however, as the ALJ noted, an examining orthopedic surgeon, Dr. Koulisis, found that Plaintiff's neurological examination was essentially normal, he had full range of motion of the lumbar spine, negative tension signs, intact sensation, and equal 2+ reflexes (Tr. 20).  The ALJ further noted Dr. Koulisis' observation that Plaintiff's allegations of pain were "contralateral to his disc herniation" and his belief that Plaintiff had no limitations in his ability to sit, stand, walk, or in the use of his hands and feet (*id.*).  Additionally, the ALJ noted that Dr. Fairleigh's neurological

examination of Plaintiff was negative, and he recommended conservative care if Plaintiff did not elect to undergo surgery (Tr. 19).

The ALJ noted in his decision that while Plaintiff's testimony was "somewhat exaggerated," he did believe that Plaintiff had some back pain due to objective findings of a herniated disk with impingement (Tr. 20).  However, the ALJ found that the objective evidence did not support the severity of pain alleged by Plaintiff (*id.*).  In so finding, the ALJ properly noted Plaintiff's choice of conservative therapy and lack of prescription pain medications (*id.*).  *See* Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (allegations of disabling pain may be discounted because of inconsistencies such as conservative treatment); Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984) (the lack of regular use of potent pain medication is a factor properly considered in evaluating a claimant's allegation of constant, severe pain).  Although Plaintiff contends, and the record reflects, that he ceased taking his medications because of gastrointestinal upset (Doc. 7 at 14, Tr. 186), the record does not reflect that Plaintiff requested different pain medications and suggests that the occasional use of Naproxen or BC Powder controlled Plaintiff's pain (Tr. 186, 208).  Finally, the ALJ noted that Plaintiff's self-described daily activities (e.g., fishing, yard work, going to the beach) did not match his subjective complaints (Tr. 20-21).  The ALJ may consider such daily activities when evaluating subjective complaints of disabling pain and other symptoms.  Marcia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. 404.1529(c)(3)(i).  Because the ALJ's factual findings are supported by substantial evidence in the record, and the ALJ properly discounted Plaintiff's subjective complaints, this court concludes that the ALJ did not err.

C.      Hypothetical Question

The ALJ posed a hypothetical question to a vocational expert which assumed an individual of Plaintiff's age, education and work experiences, with the RFC to do light work (Tr. 227-28).  The vocational expert testified that such an individual could not perform Plaintiff's past relevant work, but could perform approximately eight million light jobs and 615,600 sedentary jobs (*id.*).

Plaintiff alleges that the ALJ's question was flawed because it assumed a hypothetical individual capable of performing light work, which was inconsistent with Dr. Fairleigh's opinion (Doc. 7 at 16).  However, this court has already found that the ALJ properly rejected Dr. Fairleigh's opinion.  Although a hypothetical question must comprehensively describe a claimant's condition,

and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence, <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985), the ALJ is not required to include findings in the hypothetical that were properly rejected as unsupported. *See* <u>McSwain v. Bowen</u>, 814 F.2d 617, 620 n.2 (11th Cir. 1987).  Thus, the ALJ did not err, as his hypothetical question included those impairments he found credible and excluded those he discredited for legally sufficient reasons.[8]

For the foregoing reasons, this court concludes that the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995).  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 8th day of May 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**

---

[8]It should be noted that based upon a hypothetical question which included the limitations opined by Dr. Fairleigh in the December 2003 PCE (Tr. 190-92), with the elimination of the need to rest, the vocational expert opined that Plaintiff could perform sedentary jobs (Tr. 230-31).  Only when Dr. Fairleigh's December 2003 Clinical Assessment of Pain (Tr. 193-94) was added to the hypothetical question did the vocational expert opine that there is no work such an individual can do (Tr. 232).  However, it should be noted that Dr. Fairleigh's pain assessment notes that Plaintiff was taking no medications at the time, and the assessment is inconsistent with Plaintiff's statement in December 2003 that his average pain was only a 3 out of 10 (Tr. 188).  Moreover, the assessment itself did not preclude Plaintiff from all work, it stated, "pain is present but does not prevent functioning in everyday activities or work with limitations" (Tr. 193).